RUBSAM

v.

HARLEY C. LONEY CO.

Civ. A. No. 8136.

United States District Court
E. D. Michigan, S. D.

Oct. 28, 1953.

See also, 10 F.R.D. 344.

---

**2.** Benedict on Admiralty, 6th Ed., Vol. 2, § 280, at pg. 336.

**3.** F.R.Civ.P. 4(d) (3).

**4.** Belgian Mission for Economic Co-op. v. Zarati S. S. Co., Ltd., D.C.N.Y., 90 F. Supp. 741.

J. Adrian Rosenburg (of Rosenburg, Painter & Davidson), Jackson, Mich., John A. Blair (of Harness, Dickey & Pierce), Detroit, Mich., of counsel, for plaintiff.

Casper W. Ooms, Chicago, Ill., Robert C. Williams, Chicago, Ill., of counsel, for defendant.

THORNTON, District Judge.

This is a contract action based upon certain patent license agreements granting exclusive rights to the plaintiff upon certain patents relating to balancing weights for vehicle wheels, principally automobiles, in the so-called original production field, that is, by motor car manufacturers, as distinct from the "service field". Plaintiff seeks injunctive relief against the invasion of his exclusive license by defendant, an accounting for unpaid royalties, and assessment of costs. Questions of validity, invalidity or infringement of patents are not involved. Jurisdiction is grounded upon diversity of citizenship and the amount in controversy, plaintiff being a citizen of the state of California, and defendant being a corporation organized under the laws of the state of Michigan, and the amount in controversy being in excess of $3,000.

The defendant, in filing its answer to the complaint herein, interposed two separate and distinct claims against the plaintiff as counterclaims. The first was for a declaratory judgment as to the scope and validity of patents, and the second was a libel claim.

The plaintiff and counter-defendant moved to dismiss both counterclaims. The motion to dismiss the counterclaim for declaratory judgment as to the scope and validity of the patents was denied, and the motion to dismiss the counterclaim for libel was granted by the Court. D.C., 86 F.Supp. 350.

166 ·

A separate trial was ordered of the issues involved in the declaratory judgment counterclaim.

The claim of the plaintiff for an accounting for unpaid royalties embraces the manufacture and sale by defendant under a back license in the production field of spring-clip type balancing weights for automobile wheels under any and all so-called Hume patents and/or any other patents that may be owned or acquired by the Loney Company under said license agreements claimed to have been entered into by the parties; also the manufacture and sale by defendant of patented devices under Rubsam's patents, under an express license in the production field and under an implied license in the service field.

Weights sold in the "production" field are sold to automobile manufacturers for application to wheels at the assembly line in the automobile manufacturing plant. Weights sold in the "service" field are sold to wholesalers who re-sell to retailers who balance wheels at the retail level. This last group includes operators of tire stores, garages and others servicing the automobile owner.

Hume filed his patent application in December of 1932 showing two forms of a wheel balancing weight, which application matured several years later into the "basic" Hume Patent No. 2,036,757. Shortly thereafter Hume signed a license agreement with the Chrysler Corporation whereby Chrysler was granted a royalty-paying license, the granting clause of this license reading as follows:

"1. Hume hereby gives and grants unto Chrysler a non-exclusive license to make, or have made for it, use and sell wheel balancing devices for use on vehicles of Chrysler's manufacture and for its service requirements as covered by said patent application or such patents as may be issued covering the invention therein set forth, as well as any improvements in said invention which may be now or hereafter owned or controlled by Hume."

In accordance with the foregoing arrangement, and for a period of about two and one-half years, the Loney Company sold its set-screw weight, one of the forms shown in the original Hume application, to Chrysler for use in Chrysler production.

Shortly thereafter Hume licensed the Nash Motor Company. That license was not confined to either the production or service field, and permitted Nash to manufacture weights and/or to purchase weights made by others, without restriction, and Nash purchased Loney set-screw type weight.

Some time after Hume had filed his basic application, Virgil L. DuSang of Kokomo, Indiana, filed his application for a cast-on spring-clip type wheel balance weight. The Hume and DuSang applications were thrown into interference, and on December 12, 1934, Hume and DuSang settled their patent interference by granting cross-licenses under their patents, and by having DuSang concede priority on the counts of the interference.

The rights which Hume conveyed to DuSang, with respect to the cast-on weight were set out in paragraph 3 of the Hume-DuSang license (Defendant's Exhibit 1) which reads as follows:

"3. First party hereby grants to second party, his heirs and assigns, subject to the provisions herein set out, an exclusive license throughout the United States without restriction as to original equipment, or jobbing or direct to user sales, for the life of the patent and/or patents that may issue to first party on his aforesaid application Ser. No. 645,504 and/or any other application or applications pertinent thereto, to make, use and sell that specific form of the invention, as shown in Figs. 1 and 2 of the drawing in second party's application Ser. No. 718,915, namely, a weight having a spring clip attachment portion carrying a weighted body cast upon one portion thereof, and second party shall pay to first party a royalty of one (1¢)

cent for each and every weight of this form sold."

By the foregoing, Hume licensed DuSang exclusively to manufacture a spring clip cast-on weight for either production or service at a set royalty, and by granting this exclusive license for the cast-on weight, Hume deeded away from his own control any right to make or sell the cast-on type of weight. In addition, Hume also licensed DuSang in any other patents that might issue to him from any application or applications pertinent thereto.

In exchange for this grant, DuSang granted Hume a non-exclusive license in the cast-on weight field, including the specific form shown in Figs. 1 and 2 of DuSang's patent application, as follows:

"4. Second party hereby grants to first party, his heirs and assigns, a non-exclusive license throughout the United States without restriction as to the original equipment, jobbing and/or direct to user sales, for the life of the patent and/or patents that may issue to second party on his aforesaid application Ser. No. 718,915, to make, use and sell that specific form of the invention as shown in Figs. 1 and 2 of second party's said application, and first party shall pay to second party a royalty of one and one-half (1½¢) cent for each and every weight of this form sold."

By the foregoing Hume was licensed to operate in the cast-on weight field if he should choose to pay the 1½¢ royalty, and DuSang and Hume denied either party the right to sublicense in the following language:

"5. Neither first party nor second party shall have the right to sublicense under any of the aforesaid licenses granted one to the other, but nothing herein shall be construed as preventing either first or second parties from selling their respective patents and transferring their respective licenses therewith."

The net effect of paragraphs 3, 4 and 5 was Hume's granting the exclusive rights to the cast-on spring-clip weight to DuSang. Even though, by paragraph 4, Hume obtained a nonexclusive license from DuSang, paragraph 5 prevented his sublicensing to any party who might subsequently obtain rights under the Hume patent, unless the patents were sold outright.

Both Hume and Rubsam designed spring-clip type weights and introduced them to the trade some years prior to February 1936. Rubsam started selling his spring-clip type to Chrysler and Nash in the summer of 1935. His business and contacts in the automobile industry had theretofore been with the motor car manufacturers and he therefore contacted and interested the automobile manufacturers in his spring-clip type weight, and prior to February 1936 his sales to these sources were in a substantial amount.

Both Hume and Rubsam had filed applications for patents on their respective inventions, Hume's claim covering both the set-screw type and the spring-clip type, Rubsam claiming the spring-clip type. Questions arose in the Patent Office as to who was entitled to a patent on the spring-clip type weight. An interference proceeding followed to determine, as between Hume and Rubsam, the question of priority of invention, whereupon Rubsam conceded priority to Hume as to the spring-clip type on the three counts set up in the interference proceeding, whereupon the parties executed two contracts, Plaintiff's Exhibits A and B, on February 17, 1936.

Plaintiff's Exhibit A, the first of the two agreements of February 17, 1936, recites in paragraph 1 the existence of interference and the fact that Rubsam was conceding priority to Hume. Paragraph 2 of the granting license in which Rubsam claims his rights reads in part as follows:

"2. Hume and Loney hereby grant to Rubsam an exclusive license under United States patent to issue on said application No. 654,504 and/or under any other patent that may issue on any application for

letters patent by Hume and/or that may be owned or controlled by Hume or Loney for the life of any and all of said patents, and without royalty payments, to manufacture and sell throughout the United States balance weights to automobile manufacturers as standard equipment to be used in balancing wheels at the assembly plant, but not elsewhere, having a resilient spring clip for retaining the weight in position upon the edge of the tire retaining flange of the wheel rim; provided, however, that the herein granted license is subject to outstanding licenses entered into between Hume and Chrysler Motor Corporation of Detroit, Michigan, dated December 13, 1932, between Loney and the Nash Motor Company of Kenosha, Wisconsin, bearing date June 29, 1933 and between Hume and Virgil L. DuSang, Kokomo, Indiana, executed December 4, 1934; provided, further, that the herein granted license does not extend to balance weights having spring clips sold to automobile manufacturers to be used in service and is specifically restricted to balance weights having a resilient spring clip for holding it in position upon the rim flange as distinguished from the employment of a set screw or other fastening means."

The foregoing restricts the license to the sale of balance weights using a spring-clip attachment means as distinguished from all other types of attachment means such as set-screws, etc., for sale in the production field, and the parties are in agreement as to the effect of the exceptions expressed in the language:

"* * * subject to outstanding licenses entered into between Hume and Chrysler Motor Corporation of Detroit, Michigan, dated December 13, 1932, between Loney and the Nash Motor Company of Kenosha, Wisconsin, bearing date June 29, 1933 * * *."

Rubsam admits that at that time Loney could sell the new Merriam weight, such as Defendant's Exhibit 23, to Chrysler for production use without royalty payment to Rubsam, but the parties hereto are in disagreement as to the effect of the exception expressed in the language:

"* * * subject to outstanding licenses entered into between * * Hume and Virgil L. DuSang, Kokomo, Indiana, executed December 4, 1934."

Plaintiff's Exhibit A further contains the following:

"3. Hume and Loney agree that the royalty rate provided in the said license agreement between Hume and Virgil L. DuSang will not be decreased without the consent of Rubsam."

On the same date, February 17, 1936, Hume and Loney entered into a second agreement with Rubsam reciting the Hume application, the license to Rubsam in production, that Loney Company was likewise licensed under said application and had licensed Nash Motors with reference to balance weights used in standard equipment and service, the agreement further stating that:

"Rubsam and Loney are desirous of clearly defining their respective fields of activity for the sale of balance weights under said Hume application."

and further recites:

"1. Hume and Loney hereby agree not to manufacture, sell and/or distribute or engage in the manufacture, sale or distribution, directly or indirectly, of a balance weight having a spring clip for retaining the weight on the tire retaining flange of the wheel rim where such weights are to be used by automobile manufacturers in standard production used in balancing the wheels in the assembly plant.

"2. Rubsam hereby agrees to refrain from the manufacture, sale and/or distribution of balance weights having a resilient spring clip for retaining the weight on the tire retaining flange of the wheel rim

to be used as other than as standard equipment by automobile manufacturers and applied other than at the assembly plant.

"3. Rubsam further agrees to refrain from the manufacture, sale or distribution, directly or indirectly, to the jobbing trade, retail trade or for use in service of balance weights of any description attached to the tire retaining flange of the wheel rim of automobile wheels.

"4. Hume and Loney hereby assign to Rubsam all of their right, title and interest to royalties payable by the Nash Motor Company under the terms of the license agreement entered into between Nash Motor Company and Loney as of the 29th day of June 1933 * * *."

Under date of August 24, 1936, Hume and Loney entered into another agreement with Rubsam wherein it is recited as follows:

"1. Rubsam hereby grants to 'Hume' and 'Loney' a non-exclusive license and right to sell to the General Motors Corporation of Detroit, Michigan, and its subsidiaries, for standard equipment only and applied at the assembly line but not elsewhere, balance weights of the resilient spring clip type under any and all patents under which Rubsam has now, or may hereafter have, an exclusive license for original equipment under the aforesaid agreement dated February seventeenth, 1936, and also under patents hereinafter designated in paragraph three hereof.

"2. As a consideration for the aforesaid non-exclusive license hereby granted, as specified in paragraph one hereof to sell said balance weights to the General Motors Corporation and its subsidiaries, 'Loney' and 'Hume' agree to pay 'Rubsam' on or before the fifteenth day of each month the full amount due for the previous month equal to one-half cent (½¢) per balance weight calculated upon the number of resilient spring clip balance weights sold either directly or indirectly by Loney or Hume to General Motors Corporation or to any one of its subsidiaries for standard equipment for the balancing of wheels at the assembly plant. * * *

"3. Rubsam hereby grants to Hume and Loney for the consideration hereinbefore specified a non-exclusive license to manufacture and sell to General Motors and its subsidiaries for standard equipment balance weights for wheels under United States patents to issue for applications Serial Nos. 55,236 and 757,542 and/or under any other patent or patents that may issue upon any application for letters patent by Rubsam and/or that may be acquired or controlled by Rubsam for the life of any and all of said patents pertaining to balance weights."

The parties herein are in agreement that at the time that Exhibits A and B were executed, the license granted to Rubsam therein was subject to outstanding licenses entered into between Hume and each of the following: Chrysler, Nash and DuSang; and since Rubsam is contending that he is entitled to royalties from Loney on cast-on spring-clip weights, by virtue of license agreements as evidenced by Exhibits A, B, C and D, to permit the Court to find for the plaintiff in this respect it would be necessary to find that at some time during the dealings between the parties the provision in relation to cast-on spring-clip weights in the exclusive license given by Hume to DuSang was divorced from the Hume-DuSang license and given over to Rubsam. However, the Court can find nothing in the testimony and/or the exhibits that would warrant it in withdrawing cast-on spring-clip weights from the exclusive field in which they were placed by the Hume-DuSang license agreement, and placing them in the control of Rubsam at a subsequent time, and at a time when Rubsam knew, or should have known, that the license granted him

by Hume and Loney on February 17, 1936, was subject to the exclusive license granted by Hume to DuSang on December 4, 1934.

The plaintiff is further contending: "that Loney Company has an implied license on the Rubsam patents in service, and must pay reasonable royalty for all weights under Rubsam's patents sold in service if any one feature covered by any one of the Rubsam patents has been used. * * *"

The plaintiff further claims that all of the elements of an offer, acceptance and subsequent conduct form the basis of an implied contract, and amply appear from the evidence in the case.

It is conceded that no formal license on Rubsam patents in the service field was ever signed or executed as a contract by the parties to this litigation.

From the evidence submitted in relation to the existence or nonexistence of an implied license between the parties herein, we find postponement of the making of an offer; attempts by the parties to get together on an agreement; an expressed desire on the part of Rubsam to stay out of the service field with his type of weights; the possibility of a final agreement contingent upon the application of a low price to large consumers; completely divergent views by each of the parties as to the function of the hole in the clip; a constant controversy between the parties, and a repeated denial by Loney of the validity of Rubsam's patent No. 2,137,146; an acknowledgment by Rubsam that Loney considered Rubsam's patent No. 2,137,146 invalid; the conduct of Rubsam and his counsel in notifying five of Loney's customers of the infringement of his, Rubsam's, patent on the hole in the clip, No. 2,137,146, and the conduct of Rubsam in placing Loney in the category of a selling agent in the production field.

██ From the foregoing analysis of the evidence, it is impossible to perceive in the conduct of these parties that degree of mutuality of understanding that is necessary to imply a license. Here is a background rampant with uncertainty and indecision upon a subject matter constantly under accusation of patent invalidity by one of the parties. When, as here, doubt and difference prevail in the minds of the parties, this Court cannot, and will not, imply a contractual relationship between them.

It is a further part of plaintiff's claim:

"That the Loney Company has an *express license* under *Rubsam* patents for original production, and must account for royalties for the use thereof for all weights sold for production except only those in which the Rubsam patents have been used in combination with the Hume spring clip and royalty at the stipulated rate had been paid by the Loney Company on the spring-clip feature. (One license fee only of ½¢ per weight on each weight sold.)"

And in support of this part of the plaintiff's claim, we find set forth in his brief the following:

"After cancellation of the license which the Loney Company had under Rubsam's patents (cancellation accomplished by Ex. D, August 5, 1944,) the Loney Company in 1945 desired to be re-licensed, one of the apparent reasons being to secure the large volume of Ford and Plymouth business (Def.Ex. 93, Tab 109.) On May 3, 1946 (Ex.DD, Tab 113) Rubsam wrote giving Loney Company authority to go after production business, except Nash, Chrysler, Dodge and DeSoto (which were covered by license as hereinbefore mentioned.) This letter also contains the following:

" 'In order to enable you to quote as low as possible to Ford and Plymouth, I herewith agree that you use my designs as of Patents 2,137,415, 2,137,416, 2,329,854 and 2,359,246 (all Rubsam patents) without increase over the royalty of ½¢ per balance weight payable to me under our agreement of August 24, 1936.

I further agree that whenever the total quantity of 2,500,000 (Two Million Five Hundred Thousand) is reached during one calendar year, the royalty will automatically be reduced to 1/4¢ per balance weight for all additional weights sold during the remainder of said calendar year.

" 'I am enclosing a letter of introduction to the L. A. Young Spring & Wire Corp. who are tooled up for the manufacture of my various types of balancing weights and who will be glad to assist you in every manner to handle all additional "production" business by acting as your source of supply.' (This letter is dated May 3, 1946.)

"In reply Loney Company wrote Rubsam on May 6, 1946 (Pl.Ex.EE, Tab 114) as follows:

" 'I wish to thank you for extending to our company the right in the production field under your patents No. 2,137,415; 2,137,416; 2,329,854 and 2,359,246 on the basis of a royalty of one-half cent (1/2¢) per weight for the first two and one-half million (2,500,000) and a royalty of one-quarter cent (1/4¢) per weight thereafter during any one calendar year.

" 'If it is agreeable to you it is just a thought that the current year could start as of January 1, 1946.' (This would be retroactive of course.)

"Mr. M. J. Hume of the Loney Company testified that the Loney Company's license in production was *exclusive as to General Motors units* (R. 257–259) that *it still has such license,* and pays Rubsam royalties. It will be noted from Exhibit 72 (folder of monthly royalty reports) that weights are designated as *Rubsam steel weights.* This express license thus granted was a further extension of the original back license granted by Rubsam to Loney Company in August, 1936, was never surrendered or cancelled, and the Loney Company continues to operate under this license as extended and continues to pay royalties thereunder although not all the royalties due. Insofar as the weights use the spring clip as a means of attachment to the rim flange and the Loney Company has paid royalties to Rubsam on such spring-clip feature covered by the Loney controlled patents, additional royalties would not be due Rubsam for the use of his patents. But as to the Rubsam steel weights, royalties thereon are due under the license which the Loney Company has for production under Rubsam's patents. And it is pertinent and material to here note that *as such licensee the Loney Company concedes validity of the Rubsam patents, and is estopped to deny the same.* It would be, we submit, rather inconsistent and an unusual position for the Loney Company to say that it holds a license and is estopped to deny validity in the production field, but in the service field in respect of the identical construction assail validity and claim that its use in the service field is a wrongful infringement, rather than a permissive use."

The foregoing letter from Rubsam to Loney of May 3, 1946, also contains the following:

"In the meantime Mr. Beaman will have been able to conclude his findings as to the validity of my patent No. 2,137,416; "

this being further evidence of the fact that Rubsam knew that Loney was questioning the validity of his patent No. 2,-137,416.

Exhibit D, referred to by the plaintiff in support of his contention "that the Loney Company had an express license under Rubsam patents for the original production," is an alleged contract bearing date of August 5, 1944, appended to the plaintiff's bill of complaint, the parties being Harley C. Loney Company and Charles F. Rubsam. The validity of this document as a contract is vigorously assailed by the defendant claiming that:

"This alleged contract was pleaded by Rubsam, because of a provision therein which Rubsam contends awards him an absolutely exclusive right in the production field, rather than a right restricted by the exception of the DuSang right, as noted in the original Loney-Rubsam contract."

and further claims that:

"(1) Even were all of Rubsam's evidence taken at face value, this document fails to meet the formal requirements of a contract between these parties.

"(2) The evidence conclusively proves that Rubsam did not attempt to deliver the document to make it a contract, that he never regarded it as a contract, and that he has attempted to practice a fraud on this Court by introducing the document in this manner into this case."

Under date of November 1, 1940, Hume signed this contract, Exhibit D, and transmitted it to Rubsam's patent attorneys with a cover letter which stated in part as follows:

"Per the instructions of our Mr. Beaman, we are forwarding you herewith proposed supplemental agreement in duplicate as requested by Mr. Rubsam. We have properly signed and attested same."

After the receipt of the proposed agreement, Rubsam rejected it on two different occasions, and on a third occasion submitted to Loney a counteroffer "in 7 lines, as per enclosed copy" and in keeping with Rubsam's suggestion Loney forwarded to him a short form of letter agreement which was intended to accomplish what Rubsam suggested in his counteroffer. Rubsam responded to this by stating that he was not going to execute any supplementary agreement until he had discussed the matter with his patent attorneys. This was the status of the proposed supplemental agreement as of December 21, 1940. It is Rubsam's claim that he executed this contract, Exhibit D, in April 1941, and that he for-warded the executed contract to Loney on August 5, 1944. Loney denies receiving the executed contract from Rubsam and denies having any knowledge of the fact that Rubsam executed the said contract, further claiming that his first knowledge of the existence of the executed contract was when the within action was commenced by the plaintiff.

■■ From December 21, 1940, when Rubsam reserved his decision to accept a supplementary agreement (the terms of which were, to some degree, still in controversy) to enable him to discuss the whole situation with his patent attorneys, until August 5, 1944 (the date Rubsam claims he forwarded the contract to Loney) the evidence does not warrant this Court in finding that there was an acceptance of the supplementary agreement by Rubsam that was made known to Loney; and, further, the evidence does not warrant the Court in finding that during this period of time there was a continuing offer by Loney to Rubsam of the express provisions covered by Exhibit D. There is, however, ample evidence to permit the conclusion by the Court that the procedure claimed by Rubsam in his acceptance of the agreement, and in his delivery of the agreement to Loney, does violence to the proposition that an offer has to be accepted within a reasonable time. This conclusion is reached in spite of the fact that there was no great need for balance wheel weights because automobile production was down as a result of World War II. Rubsam knew no more than anyone else when World War II might be concluded. By his own testimony he executed the agreement in April of 1941 and then, at a propitious moment, as far as his interests were concerned, Rubsam proclaimed the existence and validity of an executed contract. It is not our understanding that this procedure in the field of contract law is such as the courts may countenance by recognizing such an instrument as an enforceable contract.

■ From the conduct of the parties, Rubsam and Loney, as adduced by the evidence, it is apparent that subsequent

to August 5, 1944, and up until the time of the commencement of this action, they gave no consideration to the provisions contained in Exhibit D. The Court is convinced that, if Rubsam did accept the offer of Loney, it was a private act by Rubsam which was not communicated in any manner to Loney and, therefore, has no legal existence as a binding agreement between the parties, and the Court does so find.

The arrangement that was established between the parties by Rubsam's letter of May 3, 1946, and by Loney's return letter of May 6, 1946, as set forth above, was of short duration, and was terminated when, on November 22, 1946, Rubsam informed Loney by telegram as follows:

"Confirming my letters November 18 and 19 my final conclusion is that you should restrict your activities to that of a sales agency as per contract and subsequent discussions STOP Since last May 3 you have exceeded your authorities which has caused disturbance in my business relations and I consider your latest proposition as an attempt to gradually undermine my control over my business STOP I have advised my friends accordingly and will outline my new program in opposition to the final one of your last letter provided you assure me that you will closely cooperate."

This termination was confirmed on November 26, 1946, when by telegram Loney stated:

"Attention: Mr. C. F. Rubsam

"Will act as your selling agency and restrict our activities to that. * *'

In confirmation of the fact that both parties recognized Loney's status as that of a sales agency, there is a letter from Rubsam to Loney under date of December 3, 1946, wherein it is stated in part as follows:

"I appreciated your wire where you stated that you 'will act as our selling agent and restrict your activities to that.'"

A letter from Loney to Rubsam dated December 9, 1946, stated:

"With reference to the distribution of your steel weight to production, I used the statement 'per our contract'—perhaps this was a bit hazy, but what I meant to convey was that acting as your selling agent we would restrict our activities to only those manufacturers you had previously stated it was okeh to contact on their production requirements."

A letter from Rubsam to Loney dated February 8, 1947, related in part the following:

"My present program, and I am still working on same, provides for your company to act as our Gen. Sales Agency for my steel weights."

Another letter from Rubsam to Loney, written on June 20, 1947, stated:

"This reservation on my part shows that I did not accept any royalty payment from you on the sale of my steel weights, but considered you as my selling agent. You promptly accepted my reservation, and so the situation is very clear. * * *

"If you desire to have any further dealing with my company or myself, it will be necessary that you take the role of a selling agent and restrict yourself to that role, as you promised you would do.

"Regarding 'exclusiveness' I have handed photostats of several of your letters to Mr. J. King Harness. These letters show that exclusiveness never existed. In fact, no contract existed, after your letter of Sept. 5, 1946, where you suggested that negotiations for a contract be continued."

█ From the foregoing, together with additional evidence, it is apparent that both parties recognized that Loney was acting in the capacity of a selling agency, and not in the capacity of an express licensee.

Rubsam is asking that Loney be restrained by the injunction of this Court from selling weights to the General Motors Corporation, charging Loney with an invasion of his exclusive production field by the sale of weights to General Motors Corporation, and contends that:

"Due to this invasion of his exclusive field of activity plaintiff suffers and will continue to suffer irreparable loss and injury because of the loss of business with General Motors Corporation and subsidiaries which plaintiff has heretofore enjoyed, resulting in disorganization and restriction of his steel balance weight business."

Rubsam's proof in support of this allegation falls far short of establishing that he enjoyed an exclusive field in relation to his sales to General Motors Corporation, and further fails to establish any invasion of his rights in this regard by Loney.

In conclusion, it has been stated by counsel for one of the parties that:

"The history of the relationship between the parties has been stormy and wordy, as is evidenced by the volume of correspondence between them, only a small part of which has been introduced here in evidence."

and, to this conservative appraisal of the conduct of the parties, this Court can only add that if the minds of the parties ever met on any given proposition in relation to their business dealings, it was an extremely casual and confused meeting, of short duration.

Such history of confusion and uncertainty reflects critical deviation from any embarkation upon, and adherence to a defined contractual relationship. We may only conclude that the parties intended and, in fact, practiced an informal and flexible modus operandi adapted to the fluctuations and exigencies of their particular interests over the period of years represented by the negotiations hereinabove outlined.

Since the proofs, in the opinion of this Court, amply sustain this conclusion, the relief requested by the plaintiff must be denied. It is hereby so ordered and adjudged.